IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEREK TAYLOR DOKER )
)
v. ) NO: 3:17-0947
)
MONTGOMERY COUNTY, TENNESSEE )

**TO: Honorable Aleta A. Trauger, District Judge**

# R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered July 26, 2017 (Docket Entry No. 5), this action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending are separate motions for summary judgment filed by Defendants Montgomery County, Tennessee (Docket Entry No. 33) and Correct Care Solutions, LLC (Docket Entry No. 37). Plaintiff has not responded to the motions. For the reasons set out below, the undersigned respectfully recommends that the motions be granted and this action be dismissed.

## I. BACKGROUND

Derek Taylor Doker ("Plaintiff") is a former inmate who was confined at the Montgomery County Jail ("Jail") in Clarksville, Tennessee during 2017. He is no longer incarcerated and appears to currently reside in Williamston, South Carolina.[1]

---

[1] The docket report for the case indicates that Plaintiff called the Clerk's Office on December 27, 2017, to provide a non-institutional residential address.

The following background information is summarized from Plaintiff's pleadings and the undisputed evidence in the record.[2] On December 4, 2016, Plaintiff was seriously injured in a car accident, suffering a broken pelvis, a broken leg, broken ribs, as well as other injuries. The treatment of his injuries required that he stay in either a hospital or a rehabilitation center for several weeks after the accident, but he was eventually cleared to be released and, on January 4, 2017, he entered the Jail on charges related to the accident. Plaintiff arrived at the Jail in a wheelchair with restrictions on his ability to ambulate and was placed in a medical isolation cell in the medical unit. He remained there until March 4, 2017, when he was moved to a general population housing unit after the order for a wheelchair was discontinued and he was no longer restricted to the medical unit.[3] With the exception of a period of less than a week when he returned to the medical unit in May 2017, Plaintiff remained in the general population the remainder of his time at the Jail.[4] Although it is unclear exactly when Plaintiff was released from the Jail, he appears to have been released in late November or in December of 2017. While at the Jail, Plaintiff received various forms of medical treatment for his injuries from the medical staff at the Jail and from outside medical providers, including multiple medications, x-rays, sick call examinations at the Jail, and consultations and appointments with outside medical providers.[5] The frequency of Plaintiff's treatment ranged from being seen quite often during his first few months at the Jail to being seen less frequently as his injuries healed.

---

[2] *See* Amended Complaint (Docket Entry No. 7) at 1; Docket Entry No. 37-2.

[3] *See* Docket Entry No. 37-16.

[4] *See* Docket Entry Nos. 37-20 to 37-23.

[5] *See* Docket Entry Nos. 37-1 to 37-28.

On June 15, 2017, Plaintiff filed this lawsuit *pro se* and *in forma pauperis* based on allegations that he was subjected to unconstitutional conditions of confinement at the Jail. By Memorandum and Order entered July 26, 2017 (Docket Entry Nos. 4 and 5), the Court found that Plaintiff alleged an arguable claim against Montgomery County, Tennessee ("Montgomery County") for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., based on allegations that he was housed in a cell that was not handicapped accessible and did not have handrails. Although other claims were dismissed upon the initial review, Plaintiff subsequently filed an amended complaint stating arguable claims under 42 U.S.C. § 1983 for violations of his constitutional rights against Montgomery County and Correct Care Solutions, LLC ("CCS"), a private entity that provides medical care to inmates at the Jail. *See* Docket Entry Nos. 7 and 17.

Specifically, Plaintiff alleges a claim that he was denied constitutionally adequate medical care at the Jail because: (1) during his first three months at the Jail, he was held in a restricted medical cell that was not equipped with handicap bars and that kept him in isolation for 23 hours a day; (2) he fell and injured himself on one occasion while transferring from his wheelchair to the toilet in the medical cell; and, (3) he was denied physical therapy and had a limited ability to exercise while kept in the medical cell, which he contends caused him to develop a limp. *See* Amended Complaint. Plaintiff also alleges that the medical unit cell into which he was placed on May 25, 2017, had feces and urine in it and he contends that he developed Hepatitis C because of the uncleanliness of his cell. *Id*.

Defendants filed answers, *see* Docket Entry Nos. 12, 23, and 26, and the Court entered a scheduling order providing for a period of pre-trial activity, including a period for discovery. *See*

Docket Entry No. 14. Other than the two motions for summary judgment, there are no other motions pending in the lawsuit.

## II. MOTIONS FOR SUMMARY JUDGMENT

Defendant CCS acknowledges that Plaintiff suffered from serious medical conditions while at the Jail. However, CCS argues the undisputed evidence shows that he was provided with appropriate medical care and that there is no evidence showing that any CCS staff member treated him with deliberate indifference. *See* Memorandum in Support (Docket Entry No. 38) at 11-12. Defendant CCS further argues that, even if an individual staff member failed to treat Plaintiff appropriately, CCS cannot be held liable under 42 U.S.C. § 1983 based upon the theory of *respondeat superior* because of the actions of its employees and that there is no evidence supporting a claim that any CCS policy, custom, or procedure led to a violation of Plaintiff's constitutional rights. *Id*. at 12-15. To the contrary, CCS argues that its policies mandate that CCS staff receive appropriate training and supervision and that prisoners under its care receive appropriate medical care and treatment. *Id*. at 16-18. Defendant CCS supports its motion with: (1) a Statement of Undisputed Material Facts (Docket Entry No. 39); (2) the affidavit of Jessica Ison ("Ison Affidavit"), who is the CCS Health Services Administrator in Montgomery County (Docket Entry No. 37-1); and, (3) copies of Plaintiff's medical records and CCS policies (Docket Entry Nos. 37-2 to 37-34).

Defendant Montgomery County likewise acknowledges Plaintiff's serious medical needs while he was at the Jail but argues that the undisputed facts fail to support either a claim that it violated the ADA or a claim that it violated Plaintiff's constitutional rights. *See* Memorandum in Support (Docket Entry No. 34) at 7-14. Montgomery County further contends that Plaintiff failed

4

to exhaust the administrative remedies available to him at the Jail prior to bringing his lawsuit, *id*. at 6 and 15, and that Plaintiff has not offered any evidence of a policy, practice, or custom of Montgomery County that can be linked to the alleged constitutional violations. *Id*. at 11-12 and 14. Defendant Montgomery County supports its motion with: (1) a Statement of Undisputed Material Facts (Docket Entry No. 35); and, (2) the affidavit of Douglas Tackett ("Tackett Affidavit"), the Assistant Chief Deputy of the Detention Division of the Montgomery County Sheriff's Office (Docket Entry No. 36). Defendant Montgomery County also relies upon the Ison Affidavit.

Plaintiff was notified of the motions for summary judgment filed by Defendants, warned that his lawsuit could be dismissed if he failed to respond, and given a deadline of April 27, 2018, to file a response. *See* Order entered March 12, 2018 (Docket Entry No. 40). However, Plaintiff has not responded in any manner to the motions. The docket report reflects that he has had no contact with the Court since being released from the Jail.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431

(6th Cir.), *cert. denied*, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the burden of showing the absence of genuine factual disputes. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## IV. CONCLUSIONS

A. Constitutional Standards

Plaintiff's status as either a pretrial detainee or a convicted inmate while at the Jail determines the constitutional underpinning for his claims. Pretrial detainees are protected from mistreatment by the Due Process Clause of the Fourteenth Amendment while convicted inmates fall within the purview of the Eighth Amendment's prohibition of cruel and unusual punishment. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

Although Plaintiff's status is somewhat unclear,[6] the distinction in his status has no practical effect in this case because the standards of the Eighth Amendment apply to pretrial detainees who raise claims of inadequate medical care and inadequate conditions of confinement. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985); *Thompson v. Cty. of Medina, Oh.*, 29 F.3d 238, 242 (6th Cir. 1994).

B. Plaintiff's Claims

Although Plaintiff's allegations were sufficient to permit his claims to survive initial review, he cannot rely solely upon his allegations at this stage of the proceedings. When a motion for summary judgment is properly supported under Rule 56, as are Defendants' motions, the non-moving party may not rest on the allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact that requires that the case proceed to trial. *See Celotex Corp.*, 477 U.S. at 323-24; *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). As the Sixth Circuit has noted, when a defendant files a motion for summary judgment, the plaintiff is challenged to "put up or shut up" on critical issues. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Plaintiff's *pro se* status does not relieve him of this obligation, which is a threshold requirement for all non-moving parties when summary judgment is sought by an opposing party. *Sixty Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987).

---

[6] Plaintiff states that he was a pretrial detainee. *See* Complaint at 1. However, Defendant Montgomery County states that he was an inmate of the Tennessee Department of Correction. *See* Affidavit of Douglas Tackett at 1, ¶ 2.

Plaintiff has not satisfied this threshold obligation. He has not responded to Defendants' motions, has not rebutted the evidence or arguments set forth by Defendants, and has not supported his claims with any actual evidence. Additionally, his failure to respond to Defendants' Statements of Undisputed Facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment." Local Rule 56.01(g). Accordingly, the Court may rely upon the facts set forth by Defendants as the undisputed evidence.

Even viewed in the light most favorable to Plaintiff, the undisputed evidence runs counter to any reasonable finding of liability against Defendants under 42 U.S.C. § 1983 on Plaintiff's constitutional claims. This evidence shows that medical care was regularly provided to Plaintiff for the injuries that he suffered as a result of his car accident. He was provided with numerous medications, routinely examined by CCS staff, and taken for outside visits with medical care providers. He was further promptly taken to an emergency room after falling in his cell.

Although Plaintiff was housed in a cell without handrails while he was in a wheelchair, there is no evidence (1) that medical orders were in place that required him to have special assistance reaching either his bed, a toilet, or the shower or (2) that an obvious need existed for Plaintiff to have special assistance. Although Plaintiff fell while attempting to transfer himself to the toilet, the undisputed evidence shows that he had reported to CCS staff that he was able to accomplish this task. Finally, there is no evidence before the Court showing that a medical order had been issued for Plaintiff to receive physical therapy at the Jail, let alone that CCS or Jail staff ignored such an order.

Clearly, being housed in a jail facility did not provide Plaintiff with the same type of assistance and special accommodations that he would have received had he remained in a

rehabilitation center. However, the constitutional guarantees regarding medical treatment for prison inmates do not require that he receive the optimal or best medical care possible. Plaintiff must set forth evidence of "deliberate indifference" to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Although this standard does not require a showing that Defendants acted with a purpose or intent to inflict harm, the standard is nonetheless a high standard and is not satisfied by a showing of negligence or medical malpractice. *Id.* at 105; *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2011).

Plaintiff has not met this standard. In contrast to cases in which inmates with special needs were treated with apathy or ignored, *see Hicks v. Frey*, 992 F.3d 1450 (6th Cir. 1993) (paraplegic inmate was subjected to conditions of confinement which rendered him essentially bedridden and deprived him of basic human needs); *Weeks v. Chaboudy*, 984 F.2d 185 (6th Cir. 1993) (prison physician's refusal to admit wheelchair bound inmate to infirmary prevented the inmate from using his wheelchair and rendered him unable to shower himself or care for his person); and *Leach v. Shelby Cnty.*, 891 F.2d 1241 (6th Cir. 1989) (paraplegic inmate was not given a special mattress or assistance with bathing or bodily functions for his first ten days in county jail), there is no evidence before the Court that Plaintiff was ignored or was treated in such a cursory and apathetic manner that a reasonable jury could conclude that his treatment violated constitutional norms.

There is also no evidence before the Court supporting his constitutional claim based upon allegations about the uncleanliness of his cell in late May 2017. As the Court noted in its initial review, Plaintiff's allegation of an unclean cell was not sufficient to show the type of extreme and identifiable deprivation of a human need necessary to support a constitutional claim. *See* Docket Entry No. 4 at 4. Plaintiff subsequently buttressed his claim by making an allegation in his amended

9

complaint that he contracted Hepatitis C because of the unsanitary conditions. However, Defendant Montgomery County has set forth unrebutted evidence that there are no records or documentation showing that Plaintiff was diagnosed with Hepatitis C while at the Jail, and Plaintiff has not supported his allegation with any actual evidence. As such, Plaintiff has not set forth evidence necessary to support his constitutional claim.

Finally, with respect to his constitutional claims, Plaintiff lacks proof that any alleged shortcoming at the Jail, even if it rose to the level of a constitutional violation, was the result of an official policy or a custom promulgated by either CCS or Montgomery County. Such proof is required for a claim against these Defendants. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). There must be evidence of a direct causal link between an official policy or custom and the alleged constitutional violation. Otherwise, a Section 1983 claim will not lie. *See City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 507-09 (6th Cir. 1996). *See also Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) ("the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference.").

Plaintiff's final claim is that Defendant Montgomery County violated the ADA because he was housed in a cell that did not accommodate his needs while he was temporarily using a wheelchair. Title II of the ADA applies to public entities, *see* 42 U.S.C. § 12131(1)(B), and is applicable to services, programs, or activities of correctional facilities. *See Pennsylvania Dep't of Corr. v. Yetsky*, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (Title II applies to state prisons); *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010). Under Title II, "no qualified

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.

While Plaintiff's allegations permitted him to survive initial frivolity review by virtue of an arguable ADA claim, he has not pursued and supported this claim with any modicum of evidence or with any argument as to how the ADA was violated by his particular situation. The Court is not required to assume facts or make legal arguments supporting Plaintiff's claim. *See Bell v. Tennessee*, 2012 WL 996560, *9 (E.D. Tenn. March 22, 2012) (quoting *Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215 (6th Cir. 2000). *See also Brown v. Matauszak*, 415 Fed.App'x 608, 613 (6th Cir. 2011); *Payne v. Secretary of Treas.*, 73 Fed.App'x 836, 837 (6th Cir. 2003). Additionally, Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir. 2007).

Based on the evidence that is before the Court, no reasonable jury could find in favor of Plaintiff on his claims. Even when the evidence is viewed in the light most favorable to Plaintiff, there is simply no evidence that he was treated in a manner that violated his constitutional rights or his rights under the ADA. Given the dearth of evidence supporting his claims, any factual questions fail to rise to the level of genuine issues of material fact that require that this action proceed to trial. Because the Court finds there is no evidence supporting the merits of Plaintiff's claims, it is not necessary to address Defendant Montgomery County's failure to exhaust defense.

# R E C O M M E N D A T I O N

For the reasons set out above, the undersigned Magistrate Judge respectfully RECOMMENDS that the motions for summary judgment filed by Defendants Montgomery County, Tennessee (Docket Entry No. 33) and Correct Care Solutions, LLC (Docket Entry No. 37) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service such objections. *See* Federal Rule 72(b)(2) and Local Rule 72.03(b)(2).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge